```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

ROSEMARIE PELTIER,                    )
                                      )
                Plaintiff,            )
                                      )
                v.                    )    Civil No. 2014-33
                                      )
PATRICK DONOHUE, POSTMASTER GENERAL OF)
THE UNITED STATES POSTAL SERVICE;     )
AMERICAN POSTAL WORKERS UNION, AFL-CIO)
VIRGIN ISLANDS AREA LOCAL 6176;       )
AMERICAN POSTAL WORKERS UNION, AFL-CIO)
                                      )
                Defendants.           )
_____ )
```

ATTORNEYS:

**Ryan W. Greene, Esq.**
St. Thomas, VI
    *For the plaintiff Rosemarie Peltier,*

**Ronald Sharpe, United States Attorney**
**Noah David Sacks, AUSA**
United States Attorney's Office
St. Thomas, VI
    *For the defendant Patrick Donohue, Postmaster General,*
    *United States Postal Service,*

**Michael C. Quinn, Esq.**
Dudley Topper & Feuerzeig
St. Thomas, VI
**Darryl J. Anderson, Esq.**
**Kelly Beck, Esq.**
O'Donnell, Schwartz & Anderson, P.C.
Washington, DC
    *For the defendants American Postal Workers Union, AFL-CIO*
    *Virgin Islands Area Local 6176, and American Postal Workers*
    *Union, AFL-CIO.*

*Peltier v. DeJongh, et al.*
Civil No. 2014-33
Order
Page 2

## ORDER

Before the Court are the defendants' motions to dismiss the complaint filed in this matter by plaintiff Rosemarie Peltier.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1994, Rosemarie Peltier ("Peltier") was employed by the United States Postal Service (the "Postal Service"). As a postal employee, Peltier was a member of American Postal Workers Union, AFL-CIO Virgin Islands Area Local 6176 ("APWU Local"). APWU Local is the local union branch of the American Postal Workers Union, AFL-CIO ("APWU").

On November 30, 2001, Peltier was involved in a traffic accident. A car driven by Peltier struck a pedestrian, resulting in the pedestrian's death. Thereafter, on May 31, 2002, Peltier was charged in the Virgin Islands Superior Court with negligent homicide by means of a motor vehicle, in violation of the Virgin Islands Code. Following the filing of charges against Peltier, on June 4, 2002, the Postal Service placed Peltier on leave without pay from her position.

Peltier went to trial before the Honorable Rhys Hodge, then a judge of the Virgin Islands Superior Court. Peltier was acquitted of the sole charge against her on July 20, 2006. Peltier sent the Postal Service a certified letter, with which Peltier included a copy of her Judgment of Acquittal, to

*Peltier v. Brennan, et al.*
Civil No. 2014-33
Order
Page 3

Postmaster Robert Allen of the Virgin Islands Postal Service

("Allen").  The letter Peltier sent to Allen was signed for and

received on August 1, 2006.

On September 11, 2006, Allen sent a letter to Peltier,

requesting that Peltier "report to duty" on September 16, 2006.

Effective September 15, 2006, Peltier was taken off of leave

without pay status, and returned to regular work status. Peltier

returned to work, and resumed her job as a window service

technician. On September 22, 2006, Peltier filled out Postal

Service Form 8038 ("Form 8038"), titled "Employee Statement to

Recover Back Pay."  Peltier sent her Form 8038 by certified mail

to Allen on September 22, 2006.  Allen received and signed for

the Form 8038 on September 24, 2006.

In December, 2006, Peltier called her Union President,

Valarie William ("William"), concerning the status of her Form

8038. William responded that William would "look into the

matter." (Compl. ¶ 24.) William sent a request for information

and status to Allen. William's request referred to Peltier as

the "grievant."  Thereafter, Peltier received a letter dated

March 1, 2007, from Allen stating that he submitted Form 8038 to

Human Resources, and that he would forward another copy.

In 2008, Postmaster David Stevens ("Stevens") sat down with

Peltier and her union representatives. Stevens asked Peltier to

provide him another copy of Form 8038.  Peltier did so at that

*Peltier v. Brennan, et al.*
Civil No. 2014-33
Order
Page 4

time. Stevens indicated he gave the Form 8038 to an individual named Keith Reed ("Reed"), in the Postal Service's Human Resources. In 2009, Peltier saw Allen while at a Kentucky Fried Chicken restaurant. Peltier and Allen had a casual conversation. At the end of the conversation, Peltier inquired as to her back pay. Allen stated that the Postal Service owed Peltier a lot of money, and Allen did not know why it was taking so long.

Two years later, in September, 2011, Peltier called and spoke to an individual named Victor Delgado ("Delgado"), who Peltier believed was a Postal Service attorney. Delgado stated that he was not familiar with Peltier's situation and back play request, and told Peltier that Reed no longer worked at the Postal Service. Delgado instructed Peltier to call Beda Velazquen ("Velazquen") in Labor Relations. On September 20, 2011, Peltier sent Velazquen a letter with copies of the documents supporting Peltier's back pay claim via registered mail with return receipt. Peltier received the return receipt.

Approximately one year later, on September 13, 2012, Peltier sat down with James Fredericks ("Fredericks"), the Local Union Steward for the APWU, and asked that a formal grievance be pursued, on Peltier's behalf, by the union. Peltier provided Fredericks with a typed statement. Fredericks handwrote a new statement, which Peltier signed. Fredericks told Peltier he would "work on" the back pay issue and get back to her. (Compl.

*Peltier v. Broome, et al.*
Civil No. 2014-33
Order
Page 5

¶ 38.) Peltier alleges that each time she spoke with Fredericks, Fredericks assured Peltier that he was "working on" her back pay. (*Id.* ¶39.)

Peltier contacted Union President Becky Butcher-Simmonds ("Butcher-Simmonds") on October 4, 2013. Butcher-Simmonds informed Peltier that Butcher-Simmonds saw only two pending grievances for Peltier: (1) a grievance for demand letters from December, 2012; and (2) a grievance related to the Postal Service putting Peltier on administrative leave in January, 2013.  Peltier told Butcher-Simmonds that there should be a grievance for back pay from 2002 through 2006.  Butcher-Simmonds stated she saw no other grievances. Butcher-Simmonds told Peltier that Butcher-Simmonds would call past-president William to inquire about any other grievances.

Thereafter, Peltier received a letter dated November 25, 2013, from Butcher-Simmonds stating that she saw no grievances related to back pay. On December 4, 2013, Peltier spoke to Fredericks. Fredericks told Peltier that he was working on something for her and would let her know. (Compl. ¶ 48.)

Peltier filed her complaint in this matter on April 1, 2014.  In her complaint, Peltier asserts: (1) breach of contract against the Postal Service; (2) breach of the duty of fair representation against APWU and APWU Local; and (3) punitive damages against APWU and APWU Local. Thereafter, in June 2014,

APWU and APWU Local filed motions to dismiss for failure to state a claim. The Postmaster General, Patrick Donohue, on behalf of the Postal Service filed a motion to dismiss on July 23, 2014.

The defendants argue that: (1) Peltier failed to exhaust her collective bargaining agreement's grievance procedures; (2) Peltier's grievance for back pay was untimely; (3) the APWU and APWU Local did not breach the duty of good faith by failing to pursue an untimely grievance; and (4) Peltier's complaint was filed after the statute of limitations ran on her causes of action. Peltier opposes the motions.

## II.  DISCUSSION

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

*Peleces v. Bronxville et al.*
Civil No. 2014-33
Order
Page 7

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " *Id.* (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps[1]:

---

[1] *Iqbal* describes the process as a "two-pronged approach" but the Supreme Court took note of the elements a plaintiff must plead to state a claim before proceeding to its two-step approach. Accordingly, the Third

> First, the court must "tak[e] note of the
> elements a plaintiff must plead to state a
> claim." Second, the court should identify
> allegations that, "because they are no more
> than conclusions, are not entitled to the
> assumption of truth." Finally, "where there
> are well-pleaded factual allegations, a
> court should assume their veracity and then
> determine whether they plausibly give rise
> to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 674, 679).

## III. <u>ANALYSIS</u>

Suits against the Postal Service or against a labor union representing Postal Service employees are governed by the Postal Reorganization Act, 39 U.S.C. § 1280 ("Section 1280"). The federal courts of appeal have uniformly held that Section 1280 is an analogue to Section 301(a) of the Labor Management Relations Act ("Section 301"). *Lawson v. Truck Drivers, Chauffers & Helpers, Local Union 100*, 698 F.2d 250, 254-55 (6th Cir. 1983)(collecting cases). As such, they have consistently applied Section 301 law to suits brought under Section 1280. *Id*.

"Under federal labor law, aggrieved employees must exhaust their [collective bargaining agreement]'s grievance and arbitration procedures before filing a complaint in federal court unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

---

Circuit has deemed the process a three step approach. *See Santiago*, 629 F.3d at 130.

covers the asserted dispute. Doubts should be resolved in favor

of coverage." *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1537

(3d Cir. 1992).

Thus, as a threshold matter, the Court must first determine

if Peltier has pleaded that she exhausted her administrative

remedies under the collective bargaining agreement ("CBA")

between Peltier, her union, and the Postal Service.[2]

The CBA defines a grievance as "a dispute, difference,

disagreement or complaint between the parties related to wages,

hours, and conditions of employment." (CBA, ECF No. 30-1.) The

CBA instructs employees that "[a]ny employee who feels aggrieved

must discuss the grievance with the employee's immediate

supervisor within fourteen (14) days of the date the employee or

the Union first learned or may reasonably have been expected to

have learned of its cause." (*Id.*) Thereafter, the supervisor is

required to state a decision on the grievance "no later than

five (5) days" after the holding of a discussion on the

grievance. (*Id.*) Once the supervisor renders a decision, the

---

[2] In making its determination, the Court will consider the excerpts of the
collective bargaining agreement attached to the defendants' motions to
dismiss.  Although district courts are generally limited to the four corners
of the complaint in deciding motions to dismiss, "a court may consider an
undisputedly authentic document that a defendant attaches as an exhibit to a
motion to dismiss if the plaintiff's claims are based on the document."
*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196
(3d Cir. 1993). Not only is the CBA in this matter integral to Peltier's
claims, but her complaint specifically references it. (Compl. ¶ 19.)
Moreover, the CBA is attached as an exhibit to the APWU Local's motion to
dismiss, (ECF No. 17-1,)and the Postmaster General's motion to dismiss (ECF
No. 30-1).

aggrieved employee has ten days to appeal the decision to "Step 2." (*Id.*)

In considering Peltier's complaint in this matter, it appears that she has failed to make any allegations that she exhausted her CBA remedies.  Though Peltier does allege that she asked her union file a grievance on her behalf on September 13, 2012,[3] no allegations are contained in the Complaint which indicate an appeal of any kind was requested or attempted. As Peltier seems to have failed to exhaust her contractual remedies, the Court must consider if such failure is fatal to her claims.

"Full exhaustion is not inevitably required by a court before it will exercise jurisdiction . . . ." *Ramirez-Lebron v. Int'l Shipping Agency, Inc.*, 593 F.3d 124, 132 (1st Cir. 2010)(internal quotation omitted).  Courts have generally recognized

> three occasions when a court may exercise jurisdiction over an employee's Section 301 suit against an employer absent complete exhaustion of contractual remedies because circumstances have impugned the integrity of the arbitration process: where (1) the union has the sole power to invoke the grievance procedures and the union wrongfully refuses to process or perfunctorily handles the grievance; (2) the employer repudiates the grievance procedures; or (3)

---

[3] The defendants argue that this request in 2012, six years after Peltier's first Form 8038 seeking back-pay was submitted, is untimely under the 14-day limitation under the CBA.  However, as no appeal was taken, the Court need not reach this issue.

*Peltier v. Debonis et al.*
Civil No. 2014-33
Order
Page 11

> resort to the grievance procedures would be
> futile.

*Id.* "Absent an allegation of at least one of these three exceptions to Section 301's exhaustion requirement, an employee's Section 301 complaint may not survive an employer's motion to dismiss based on the failure to exhaust contractual remedies." *Id.*

In reviewing Peltier's Complaint and the CBA, the Court notes that the CBA expressly permits aggrieved employees to file grievances with or without the union. (*See* CBA, ECF No. 30-1 (instructing supervisors to render their decision to the union or to the grievant.)) As such, there is no indication that the "union has the sole power to invoke the grievance procedures[.]"*Ramirez-Lebron*, 593 F.3d at 132. Peltier has also not pled that her employer, the Postal Service, repudiated the grievance procedures. If anything, the Complaint demonstrates that the grievance procedures were not fully invoked by Peltier in the first instance. Finally, the Court does not see any allegation that the grievance procedure would have been an exercise in futility within the Complaint.

As Peltier has failed to plead exhaustion or the application of any exception to the exhaustion requirement, Peltier's Complaint is vulnerable to dismissal.

Where a complaint is subject to dismissal, district courts are instructed to provide the plaintiff with leave to amend even if the plaintiff has not requested such leave. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The only exception to this general rule is where the district court finds that amendment would be inequitable or futile. *See id.*

The premises considered, it is hereby

**ORDERED** that the defendants' motions to dismiss are **GRANTED**; it is further

**ORDERED** that the complaint in this matter is **DISMISSED**; and it is further

**ORDERED** that Peltier shall, to the extent she wishes to, file an amended complaint in this matter no later than April 15, 2015.

S\_____

**CURTIS V. GÓMEZ**
**District Judge**